**KAZEROUNI LAW GROUP A.P.C.**
Ross H. Schmierer, Esq. (RS-7215)
3000 Atrium Way, Suite 200
Mount Laurel, New Jersey 08054
(856) 259-4800
ross@kazlg.com

**LAW OFFICES OF TODD M. FRIEDMAN, PC**
Todd M. Friedman, Esq.
(*Pro Hac Vice Application Forthcoming*)
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
tfriedman@toddflaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS DOUGHTY, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VISION SOLAR LLC; JONATHAN SEIBERT; SOLAR XCHANGE, LLC; MARK GETTS; AND DOES 1-10, inclusive, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. **NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT** <br> 2. **KNOWING/WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT** <br> 3. **TEX. BUS. & COMMERCE C. §302.101** <br> 4. **TEX. BUS. & COMMERCE C. §304.052** <br> 5. **TEX. BUS. & COMMERCE C. § 305.053(A)** <br><br><br> **JURY TRIAL DEMANDED** |

1.      THOMAS DOUGHTY brings this action individually and on behalf of all others similarly situated for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of VISION SOLAR LLC, and its owner and CEO Jonathan Seibert, and SOLAR XCHANGE, LLC, and its owner and CEO Mark Getts, in negligently and/or willfully contacting consumers on their cellular telephones, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA") and related regulations, specifically the National Do-Not-Call provisions, thereby invading their privacy.  Plaintiff additionally alleges that Defendants have violates the anti-telemarketing laws of the state of Texas, including Tex. Bus. & Commerce C. §302.101, 304.052, & § 305.053(a) Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

2.      Jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff's claims arise out of a law of the United States, the TCPA.

3.      Venue is proper in the United States District Court for District of New Jersey pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events

and omissions giving rise to Plaintiff's claims occurred in this District, and because Defendants reside in this District.

**PARTIES**

4.    Plaintiff THOMAS DOUGHTY (hereinafter "Plaintiff"), at all times mentioned herein was, a citizen and resident of the State of Texas.  Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10), a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27), and a "purchaser" as defined by Tex. Bus. & Com. Code § 302.001(3).

5.    Plaintiff is informed and believes, and thereon alleges, that Defendant VISION SOLAR LLC (hereinafter "VS") is, and at all times mentioned herein was, a limited liability company of the State of New Jersey.  VS is and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153(10), a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27), and a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5).  Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of New Jersey and within this judicial district.

6.    Defendant Jonathan Seibert ("Seibert") is the CEO and owner of Defendant VS and directed and caused the telemarketing at issue to be caused in this case.  Seibert is and at all times mentioned herein was a "person" as defined by

47 U.S.C. § 153(10), a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27), and a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5).

7.    Plaintiff is informed and believes, and thereon alleges, that Defendant SOLAR XCHANGE, LLC (hereinafter "SX") is, and at all times mentioned herein was, a limited liability company of the State of New Jersey.  SX is and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153(10), a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27), and a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5).  Plaintiff alleges that at all times relevant herein Defendant VS business in the State of New Jersey and within this judicial district.

8.    Defendant Mark Getts ("Getts") is the CEO and owner of Defendant SX and directed and caused the telemarketing at issue to be caused in this case. Seibert is and at all times mentioned herein was a "person" as defined by 47 U.S.C. § 153(10), a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27), and a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5).

9.    The above named Defendants, and their subsidiaries and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious

names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

10.    Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## **Background on Vision Solar, LLC and Solar Xchange, LLC**

11.    VS is in the business of selling and installing solar equipment in Pennsylvania, New Jersey, Connecticut, Massachusetts, Arizona, Florida, and Texas.

12.    VS does so by entering into contracts with lead generation companies which are specifically hired to engage in telemarketing to generate appointments.

13.    Once an appointment is generated, VS will then directly contact the individual to solicit its services.

14.    SX was a company specifically hired to engage in telemarketing on behalf of VS to generate leads.

15.    SX was incorporated in New Jersey in August 2020 and operates a call center from which it blasts telemarketing calls to millions of consumers in the United States and Texas.

16.    SX's contract with VS provided that VS would have exclusive access to appointment information and that such leads would be provided on an exclusive basis.

17.    As part of the contract, VS agreed to comply with any request from a consumer to not be contacted in the future and also to comply with the national do-not-call regulations.

18.    SX only generates leads through telemarketing through the use of pre-qualifying scripts. VS specifically prescribes what the qualifications and qualifying questions to be asked are. VS has requested, received, and reviewed call recordings from SX to review the script SX was using.

19.    Through its contract with SX, VS had the right to issue rules, regulations, and policies to SX regarding how it engaged in telemarketing.

20.     VS was the only client for a large majority of SX's history an thus all calls placed by SX during those time periods were placed exclusively for the benefit of and on behalf of VS pursuant to its contract.

21.     For periods in which SX has had other customers calls placed to Pennsylvania, New Jersey, Connecticut, Massachusetts, Arizona, Florida, and Texas were placed solely for the benefit of VS and pursuant to its contract because VS had exclusive access to leads generated from these states.

22.     VS had the right to inspect SX's work and has visited SX's offices and spoken to SX's employees who are placing the calls. VS has also requested and reviewed call recordings from SX for quality assurance, including when a customer indicated that they did not want to be called.

23.     Thus, SX was an agent of VS performing work exclusively at the direction of, under the control of, and solely for the benefit of VS.

24.     Additionally, VS was a "telemarketer" under  Tex. Bus. & Com. Code § 304.002(8) because it caused telemarketing calls to be made because it specifically retained SX to place such calls.  SX was a "telemarketer" under Tex. Bus. & Com. Code § 304.002(8) because it made telemarketing calls.

### Plaintiff's Facts

25.    On or about October 7, 2021, a company representing itself as "Energy Exchange" began calling Plaintiff on his cellular phone number ending in -0995 in an attempt to advertise or solicit VS's solar energy services.

26.    SX represents itself as "Energy Exchange" in the telemarketing calls it places on behalf of VS.

27.    In placing the call, SX used a "spoofing" device which prevented accurate caller identification from being shown on Plaintiff's phone.  SX placed calls in which it: (1) did not provide the true name of the telemarketer making the calls; and (2) did not provide the correct information (CPN or ANI) for the telephone number from which the calls were being made.

28.    On information and belief, this call as placed by SX on VS's behalf and solely for the benefit of VS. The calls were placed exclusively to solicit VS's solar energy services. Plaintiff resides in Texas such that any lead resulting from such call was exclusively for the benefit of VS.

29.    Plaintiff's cellular phone number ending in -0995 had been registered with the National Do Not Call Registry since September 11, 2007. Texas's no-call list has incorporated the National Do Not Call Registry since at least 2009, such that Plaintiff's cellular telephone number is also on the Texas No-Call List.

30.     During the call, SX read from a script used to sell VS's services to consumers.

31.     Based upon the fact that SX called a phone number that had been on the National Do Not Call Registry for over a decade and the script that the representative used, Plaintiff suspected that SX was conducting an illegal marketing campaign on behalf of VS.

32.     Plaintiff asked the representative who he was calling on behalf of. The representative stated that he was with "Energy Exchange."

33.     Plaintiff attempted to locate a legitimate business listing under the name "Energy Exchange" but could not confirm the information because that is a false name. The calls were actually placed by SX.

34.     SX's calls became more frequent during 2022.

35.     On or about January 21, 2022, Plaintiff received a call from Energy Exchange on behalf of VS, placed from phone number (610) 672-7544, which dropped.

36.     When Plaintiff called the number back to see who was calling him, SX's employee read the same script approved by VS that Plaintiff heard during the first call.

37.    Plaintiff was not interested in VS's services but scheduled an in-person appointment to determine who was behind the calls to his phone.

38.    On or about February 15, 2022, Plaintiff spoke with Thomas, who introduced himself as a Scheduling Supervisor. Thomas told Plaintiff that Energy Exchange did not do the home visits or installations. Plaintiff requested that all information be sent to his email address.

39.    On or about March 16, 2022, Plaintiff received another call from Energy Exchange on behalf of VS. Plaintiff told the agent to stop calling him and place him on their internal do-not-call list.

40.    Plaintiff's home visit appointment was on March 22, 2022. An individual named Noah, who introduced himself as an employee of VS and wore a polo shirt bearing VS's logo, arrived at Plaintiff's home.

41.    When Plaintiff asked Noah who Energy Exchange was, Noah stated that they were just a call center who made calls for and on behalf of VS.

42.    Plaintiff told Noah that he did not want to be called anymore and wanted to be placed on VS's and its agents do-not-call list.

43.    Plaintiff called VS immediately after the appointment to inform them that it needed to contact Energy Exchange to stop the harassing calls he was receiving and be placed on all applicable do-not-call lists.

44.    In reality, VS has no TCPA compliance policies, including the maintenance of do-not-call lists. VS has no individual responsible for ensuring anyone complies with the TCPA. VS does not maintain records of prior express consent. VS does not honor do-not-call requests and does not transmit such requests to its vendors, including SX.

45.    VS has knowledge that its vendors, including SX, are not complying with the TCPA and do-not-call provisions because it has received correspondence from individuals requesting VS cease calling them and been sued for such misconduct. Despite this, VS continues to refuse to maintain and enforce either a national or internal do-not-call list policy for itself or its agents.

46.    On or about March 28, 2022, Plaintiff received another call featuring the same sales script from SX under the name Energy Exchange on behalf of Defendant.

47.    Plaintiff, still attempting to stop the barrage of calls, scheduled a meeting for March 31. The agent who called would not provide the name of the company who would visit Plaintiff's home for the meeting.

48.    On March 31, 2022, Plaintiff was visited by VS's employee Bailey. Bailey specifically identified herself as an employee of VS. Plaintiff again asked who Energy Exchange was and conveyed his request that they stop calling him.

49.     On April 11, 2022, Plaintiff received another call from SX featuring the same script, this time from an agent who introduced herself as Emily.

50.     On April 13, 2022, when VS's employee showed up, Plaintiff asked how VS got his phone number. VS's employee said that the government gave Plaintiff's number to them because Plaintiff had a high electric bill. Plaintiff again requested that VS and SX stop calling him. VS's employee replied by telling Plaintiff to quit picking up the calls.

51.     Plaintiff requested that VS and SX stop calling him and place him on their and their agents do not call list multiple times.

52.     Despite these requests, SX, on behalf of VS, continued to place calls to Plaintiff's cellular phone, placing at least 17 calls to Plaintiff since its call on October 7, 2021.

53.     On information and belief, VS and SX do not maintain a written policy, available upon demand, for maintaining a do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1).

54.     On information and belief, VS and SX do not train their employees or agents who are engaged in telemarketing on the existence and use of any do-not-call list, as required by 47 C.F.R § 64.1200(d)(2).

55.    On information and belief, VS and SX failed to place Plaintiff on the

do-not-call list, despite his requests to no longer be called by either. Instead, VS

and SX continued to place calls to Plaintiff's cellular telephone, in violation of 47

C.F.R § 64.1200(d)(3).

## CLASS ALLEGATIONS

56.    Plaintiff brings this action individually and on behalf of all others

similarly situated, as a member of the two proposed classes (hereinafter, together,

the "Classes").

57.    The class concerning Defendants' National Do Not Call violations

(hereinafter, the "National DNC Class") is defined as follows:

> All persons within the United States registered on the
> National Do Not Call Registry for at least 30 days, who
> had not granted Defendants prior express consent nor had
> a prior established business relationship, who received
> more than one call made by SX on behalf of VS or by VS
> for purposes of solicitation within any twelve-month
> period, from August 6, 2020 through the date of class
> certification.

58.    The class concerning Defendant's internal do not call violations

(hereinafter, the "Internal DNC Class") is defined as follows:

> All persons within the United States who received a call
> from SX pursuant to its contract with VS or by VS for
> purposes of solicitation after requesting that either
> Defendant stop calling them and place their number on

> Defendants' internal do not call list, from August 6, 2020 through the date of class certification.

59.    The class concerning Defendant's violations of Texas law (hereinafter, the "Texas Class") is defined as follows:

> All persons in Texas who received a call from SX pursuant to its contract with VS or by VS for purposes of solicitation, from August 6, 2020 through the date of class certification.

60.    Plaintiff represents, and is a member of, the National DNC Class, consisting of all persons within the United States registered on the National Do Not Call Registry for at least 30 days, who had not granted Defendant prior express consent nor had a prior established business relationship, who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services, within any twelve-month period, within four years prior to the filing of the complaint through the date of class certification.

61.    Plaintiff represents, and is a member of, the Internal DNC Class, consisting of all persons within the United States who received a call from Defendant that promoted Defendant's products or services after requesting that Defendant stop calling them and place their number on Defendant's internal do not call list, within four years prior to the filing of the complaint through the date of class certification.

62.    Plaintiff represents, and is a member of, the Texas Class, consisting of all persons in Texas who received a call from SX pursuant to its contract with VS or by VS for purposes of solicitation, from August 6, 2020 through the date of class certification.

63.    Defendant, its employees and agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in its expeditious litigation.

64.    The Classes are so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of the Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Classes include thousands of members. Plaintiff alleges that the exact number and identities of all members may be ascertained by records maintained by Defendant.

65.    Plaintiff and members of the National DNC Class were harmed by the acts of Defendants in at least the following ways: Defendants illegally contacted Plaintiff and the National DNC Class members via their telephones for

solicitation purposes, thereby invading their privacy. Plaintiff and the National DNC Class members were damaged thereby.

66.    Plaintiff and members of the Internal DNC Class were harmed by the acts of Defendants in at least the following ways: Defendants illegally contacted Plaintiff and Internal DNC Class members after they had requested that Defendant sstop calling them, thereby invading their privacy. Plaintiff and the Internal DNC Class members were damaged thereby.

67.    Plaintiff and members of the Texas Class were harmed by the acts of Defendants in at least the following ways: Defendant illegally contacted Plaintiff and Texas Class members without complying with Texas Law, thereby invading their privacy. Plaintiff and the Texas Class members were damaged thereby.

68.    Common questions of fact and law exist as to all members of the National DNC Class which predominate over any questions affecting only individual members of the National DNC Class. Those common legal and factual questions, which do not vary between National DNC Class members, and which may be determined without reference to the individual circumstances of any National DNC Class members include, but are not limited to, the following:

      a.  Whether, within the four years prior to the filing of this Complaint through the date of class certification, Defendants or their agents

placed more than one solicitation call to the members of the National DNC Class whose telephone numbers were on the National Do Not Call Registry for over 30 days and who had not granted prior express consent to Defendants and did not have an established business relationship with Defendants;

b. Whether Plaintiff and the National DNC Class members were damaged thereby, and the extent of damages for such violations; and

c. Whether Defendants and its agents should be enjoined from engaging in such conduct in the future.

69.    As a person that received numerous solicitation calls from Defendants within a 12-month period, who had not granted Defendants prior express consent and did not have an established business relationship with Defendants, Plaintiff is asserting claims that are typical of the National DNC Class.

70.    Common questions of fact and law exist as to all members of the Internal DNC Class which predominate over any questions affecting only individual members of the Internal DNC Class. These common legal and factual questions, which do not vary between Internal DNC Class members, and which

may be determined without reference to the individual circumstances of any Internal DNC Class members include, but are not limited to, the following:

    a. Whether, within the four years prior to the filing of this Complaint through the date of class certification, Defendants or their agents placed any solicitation call to any Internal DNC Class member who had previously requested that Defendant place their telephone number on Defendant's internal do not call list.

    b. Whether Plaintiff and the Internal DNC Class members were damaged thereby, and the extent of damages for such violations; and

    c. Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

71.    As a person that received numerous solicitation calls from Defendants after requesting that Defendants put his phone number on Defendants' internal do not call list, Plaintiff is asserting claims that are typical of the Internal DNC Class.

72.    Common questions of fact and law exist as to all members of the Texas Class which predominate over any questions affecting only individual members of the Texas Class. These common legal and factual questions, which do

not vary between Texas Class members, and which may be determined without reference to the individual circumstances of any Texas Class members include, but are not limited to, the following:

     a.  Whether, within the four years prior to the filing of this Complaint through the date of class certification, Defendants or their agents placed any calls in violation of the TCPA or any provisions under the TCPA;

     b.  Whether Defendants failed to register as telemarketers in Texas prior to placing such calls;

     c.  Whether Plaintiff and the Texas Class members were damaged thereby, and the extent of damages for such violations; and

     d.  Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

73.    As a person that received numerous solicitation calls from Defendants in Texas, Plaintiff is asserting claims that are typical of the Texas Class.

74.    Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff has retained attorneys experienced in the prosecution of class actions.

75.     A class action is superior to the other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all class members is impracticable. Even if every member of the Classes could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contract, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Classes.

76.     The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

77.     Defendant has acted or refused to act in respects generally applicable to the Classes, thereby making appropriate final and injunctive relief with regard to the members of the Classes as a whole.

## FIRST CAUSE OF ACTION
## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227 ET SEQ.
## ON BEHALF OF THE INTERNAL DNC CLASS AND NATIONAL DNC CLASS

78.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

79.    The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA and its related regulations.

80.    Specifically, the regulations implementing the TCPA provide that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of person who request not to receive telemarketing calls…" 47 C.F.R. § 64.1200(d).

81.    The same regulations provide that the person or entity must have a written do-not-call policy, available upon demand, and must inform and train all persons engaged in telemarketing on the existence and use of the "do-not-call" list.

82.    Additionally, Defendants were not to place more than one call within a year to any individual on the national do-not-call list.

83.    As a result of Defendants' negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

84.    Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227 ET SEQ.
### ON BEHALF OF THE INTERNAL DNC CLASS AND NATIONAL DNC CLASS

85.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

86.    The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, and its related regulations.

87.    Specifically, the regulations implementing the TCPA provide that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of person who request not to receive telemarketing calls…" 47 C.F.R. § 64.1200(d).

88.    The same regulations provide that the person or entity must have a written do-not-call policy, available upon demand, and must inform and train all persons engaged in telemarketing on the existence and use of the "do-not-call" list.

89.    Additionally, Defendants were not to place more than one call within a year to any individual on the national do-not-call list.

90.    As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(C).

91.    Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

### THIRD CAUSE OF ACTION
### VIOLATION OF TEX. BUS. & COMMERCE C. §302.101
### ON BEHALF OF THE TEXAS CLASS

92.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

93.    Pursuant to § 302.101 of the Texas Business & Commerce Code, a seller is prohibited from engaging in telephone solicitation from a location in this state, or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

94.    Defendants did not obtain a registration certificate from the Office of the Secretary of State of Texas prior to engaging in telemarketing directed at individuals in Texas.

95.    Defendants violated § 302.101 of the Texas Business & Commerce Code when it engaged in telephone solicitation without obtaining a registration certificate from the Office of the Secretary of State.

96.    Accordingly, for violations of § 302.101 of the Texas Business & Commerce Code, Plaintiff and each member of the Texas Class is entitled to an award of no more than $5,000 for each violation pursuant to § 302.302(a) of the Texas Business & Commerce Code.

97.    In addition, pursuant to § 302.302(d) of the Texas Business & Commerce Code, Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

### FOURTH CAUSE OF ACTION
### VIOLATION OF TEX. BUS. & COMMERCE C. §304.052
### ON BEHALF OF THE TEXAS CLASS

98.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

99.    Pursuant to § 304.052 of the Texas Business & Commerce Code, a telemarketer may not make a telemarketing call to a telephone number published

on the Texas no-call list more than 60 days after the date the telephone number appears on the current list.

100.   Plaintiff and Texas Class's Members telephone numbers appeared on the Texas no-call list more than 60 days prior to the calls placed by Defendants.

101.   Defendants placed such calls knowingly or willfully and thus Plaintiff and each Texas Class Member is entitled to up to $500 for each call.

## FIFTH CAUSE OF ACTION
## VIOLATION OF TEX. BUS. & COMMERCE C. §305.053(A)
### ON BEHALF OF THE TEXAS CLASS

102.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

103.   Pursuant to § 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both.

104.   As set forth above, Defendants' calls violates the TCPA because they violated the national do-not-call regulations the internal do-not-call regulations, and the anti-spoofing regulations of 47 C.F.R. § 64.1601(e).

105.   Plaintiff and each Texas Class Member is entitled to a permanent injunction, and the greater of $500.00 for each violation or actual damages for each call.

106.   Plaintiff and each Texas Class Member is entitled to an additional $1,500 per call if Defendants' actions are found to be knowing or intentional. *See* Tex. Bus. & Com. Code § 305.053(c).

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

## <u>FIRST CAUSE OF ACTION</u>

### Negligent Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(c)

- This matter be certified as a Class Action on behalf of the Internal DNC Class and National DNC Class and Plaintiff be appointed class representative for both classes and Plaintiff's counsel be appointed class counsel.

- As a result of Defendants' negligent violations of *47 U.S.C. §227(c),* Plaintiff and the National DNC Class and Internal DNC Class members are entitled to and request $500 in statutory damages, for

each and every violation, pursuant to *47 U.S.C.  227(c)(5)(B)*.

- Any and all other relief that the Court deems just and proper.

## SECOND CAUSE OF ACTION

**Knowing and/or Willful Violations of the Telephone Consumer Protection**

**Act**

**47 U.S.C. §227(c)**

- This matter be certified as a Class Action on behalf of the Internal DNC Class and National DNC Class and Plaintiff be appointed class representative for both classes and Plaintiff's counsel be appointed class counsel.

- As a result of Defendants' willful and/or knowing violations of *47 U.S.C. §227(c)*, Plaintiff and the National DNC Class and Internal DNC Class members are entitled to  and request treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to *47 U.S.C. §227(c)(5)(B)*.

- Any and all other relief that the Court deems just and proper.

## THIRD CAUSE OF ACTION

**Violation of TEX. BUS. & COMMERCE C. §302.101**

- This matter be certified as a Class Action on behalf of the Texas

Class and Plaintiff be appointed class representative for the Texas Class and Plaintiff's counsel be appointed class counsel.

- Plaintiff and each member of the Texas Class be awarded no more than $5,000 for each violation pursuant to § 302.302(a) of the Texas Business & Commerce Code.

- All reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

- Any other relief the Court may deem just and proper.

## **FOURTH CAUSE OF ACTION**

### **Violation of TEX. BUS. & COMMERCE C. §304.052**

- This matter be certified as a Class Action on behalf of the Texas Class and Plaintiff be appointed class representative for the Texas Class and Plaintiff's counsel be appointed class counsel.

- Plaintiff and each member of the Texas Class be awarded no more than $500 for each call placed knowingly or willfully by Defendants.

- Any other relief the Court may deem just and proper.

## FIFTH CAUSE OF ACTION

**Violation of TEX. BUS. & COMMERCE C. §305.053(A)**

- This matter be certified as a Class Action on behalf of the Texas Class and Plaintiff be appointed class representative for the Texas Class and Plaintiff's counsel be appointed class counsel.

- A permanent injunction against Defendants for their conduct.

- Plaintiff and each member of the Texas Class be awarded $500.00 for each violation.

- Plaintiff and each member of the Texas Class be awarded $1,500.00 for each knowing or intentional violation.

- Any other relief the Court may deem just and proper.

### TRIAL BY JURY

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: March 14, 2023          **KAZEROUNI LAW GROUP A.P.C.**

By:    /s/ Ross H. Schmierer
       Ross H. Schmierer, Esq.
       3000 Atrium Way, Suite 200
       Mount Laurel, New Jersey 08054
       (T): (856) 259-4800
       ross@kazlg.com

**LAW OFFICES OF TODD M. FRIEDMAN, PC**
Todd M. Friedman, Esq.
(*Pro hac Vice Application Forthcoming*)
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
tfriedman@toddflaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: March 14, 2023

By:    *s/ Ross H. Schmierer*
Ross H. Schmierer, Esq.
3000 Atrium Way, Suite 200
Mount Laurel, New Jersey 08054
(T): (856) 259-4800
ross@kazlg.com
*Attorneys for Plaintiff*